1:22-CV-00773-RP

David vs. Goliath in the Digital Age: A Visually Impaired Plaintiff's Quest for Equal Footing in the Federal Arena

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

STEPHAN A. RICKS,
Plaintiff,

v.

DMA COMPANIES, et al.,
Defendants.

Case No. 1:22-CV-00773-RP

PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND OBJECTIONS TO SEPTEMBER 19, 2024 ORDER

Plaintiff Stephan A. Ricks, through undersigned counsel, respectfully moves this Court for leave to amend his complaint and objects to several aspects of the Magistrate Judge's September 19, 2024 Order. This motion and the proposed amendments are necessary to address serious violations of Mr. Ricks' rights under federal disability laws and to preserve these issues for appeal.

## I. Motion for Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Mr. Ricks requests leave to amend his complaint to:

1. Add claims under Section 504 of the Rehabilitation Act against all Defendants;

2. Clarify the basis for Defendants' obligations under the ADA and Rehabilitation Act;

3. Add factual allegations regarding Defendants' receipt of federal funding;

4. Add claims for injunctive relief to remedy ongoing violations; and

5. Add allegations regarding irreparable harm from denial of accommodations.

Leave to amend should be freely given when justice so requires. Foman v. Davis, 371 U.S. 178, 182 (1962). The proposed amendments will allow Mr. Ricks to fully present his claims and are

not sought for any improper purpose. No undue prejudice to Defendants will result.

## II. Objections to September 19, 2024 Order

Mr. Ricks objects to the following aspects of the Magistrate Judge's September 19, 2024 Order:

### 1. Denial of Auxiliary Aids and Services

The Court erred in denying Mr. Ricks' request for auxiliary aids and services, including qualified readers and notetakers. This denial violates Section 504 of the Rehabilitation Act, which mandates that federal agencies provide reasonable accommodations to ensure equal access for individuals with disabilities. 29 U.S.C. § 794; Alexander v. Choate, 469 U.S. 287, 301 (1985).

The Court's assertion that it is not required to provide such services is incorrect. As the Fifth Circuit has held, "Section 504 imposes upon federal agencies an obligation to make their programs accessible to handicapped persons." Prewitt v. U.S. Postal Serv., 662 F.2d 292, 307 (5th Cir. 1981). This includes providing auxiliary aids necessary for effective communication. 28 C.F.R. § 39.160(a)(1).

The Court's reliance on the Guide to Judiciary Policy is misplaced. Agency guidelines cannot override statutory mandates. As the Supreme Court has explained, "the fact that an agency regulation allows what the statute prohibits will not save the regulation." Brown v. Gardner, 513 U.S. 115, 122 (1994).

### 2. Denial of Motion to Reinstate OPC

The Court erred in denying Mr. Ricks' motion to reinstate claims against OPC based on newly discovered evidence. Rule 60(b) allows relief from judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." Fed. R. Civ. P. 60(b)(2).

The audio recording of an OPC representative stating they had no obligation to accommodate Mr. Ricks is material evidence that could alter the outcome. As the Fifth Circuit has held, newly discovered evidence warrants relief when it "is material and controlling and clearly would have produced a different result if present before the original judgment." Hesling v. CSX Transp., Inc., 396 F.3d 632, 639 (5th Cir. 2005).

### 3. Denial of Motion for Temporary Injunction

The Court applied an incorrect legal standard in denying Mr. Ricks' motion for a temporary injunction. For ADA claims, courts presume irreparable harm when a plaintiff shows a likelihood of success on the merits. Enyart v. Nat'l Conference of Bar Examiners, Inc., 630 F.3d 1153, 1165 (9th Cir. 2011). The Fifth Circuit has recognized this presumption in other civil rights contexts. See Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012).

### 4. Imposition of Pre-Filing Bar

The Court's imposition of a pre-filing bar on Mr. Ricks violates his constitutional right of access to the courts. As the Fifth Circuit has held, "the right of access to the courts is a fundamental right protected by the Constitution." Bounds v. Smith, 430 U.S. 817, 828 (1977). Any restriction on that right must be "narrowly drawn to protect the courts from abuse." Baum v. Blue Moon Ventures, LLC, 513 F.3d 181, 189 (5th Cir. 2008). The blanket pre-filing bar imposed here is overbroad and unjustified.

### 5. Failure to Appoint Effective Counsel

The Court abused its discretion in failing to appoint "effective" counsel for Mr. Ricks. As the Fifth Circuit has explained, courts should consider "(1) the type and complexity of the case; (2) the petitioner's ability to present and investigate his case; (3) the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and (4) the likelihood that appointment will benefit the petitioner, the court, and the defendants by 'shortening the trial and assisting in just determination.'" Ulmer v. Chancellor, 691 F.2d 209, 213 (5th Cir. 1982). These factors strongly favor appointment of counsel here.

### 6. Denial of Reasonable Accommodations

The Court erred in finding that Mr. Ricks has not demonstrated a need for accommodations. This conclusion ignores the mandate of the ADA that public entities must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). Mr. Ricks' visual impairment clearly necessitates accommodations to ensure equal access to court proceedings.

### 7. Misapplication of ADA Standards

The Court misapplied the legal standards for ADA claims. Contrary to the Court's assertion, Title II of the ADA does apply to the federal judiciary. While the statutory text is ambiguous on this point, the Department of Justice has consistently interpreted Title II to cover "all services, programs, and activities" of public entities, including courts. 28 C.F.R. § 35.102(a). This

interpretation is entitled to deference. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

## 8. Failure to Consider Cumulative Impact

The Court failed to consider the cumulative impact of its rulings on Mr. Ricks' ability to pursue his claims. As the Supreme Court has recognized, "a litigant's rights may be affected not only by a single ruling but also by 'the cumulative impact of a number of rulings that together may constitute legal error.'" Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172 (1974). The repeated denial of accommodations and dismissal of claims has severely prejudiced Mr. Ricks' case.

## 9. Mischaracterization of Plaintiff's Filings

The Court's characterization of Mr. Ricks as a "recreational filer" submitting "frivolous and duplicative motions" is unsupported and prejudicial. Pro se plaintiffs are entitled to liberal construction of their pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Mr. Ricks' filings reflect good faith efforts to vindicate his rights and obtain necessary accommodations.

## 10. Failure to Engage in Interactive Process

The Court failed to engage in the interactive process required by the ADA to determine appropriate accommodations. As the Fifth Circuit has held, both parties must engage in a "flexible give-and-take" to identify effective accommodations. Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736 (5th Cir. 1999). The Court's blanket denials of Mr. Ricks' requests violate this requirement.

## 11. Plaintiff's Motion to Exclude Expert Witness Testimony

The Court erred in denying the recusal of the defendants' attorneys as expert witnesses.

## I. Conflict of Interest

The dual role of attorney and expert witness creates an inherent conflict of interest that cannot be reconciled with the ethical obligations of legal counsel or the impartial nature required of expert testimony. As the Fifth Circuit noted in *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993), "The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

"This principle is further reinforced by Rule 3.7 of the ABA Model Rules of Professional Conduct, which states that "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." While this rule primarily addresses lawyers testifying on behalf of their own clients, the underlying rationale - avoiding confusion of roles and maintaining the integrity of the adversarial process - applies with equal force to the situation at hand.

## II. Violation of Federal Rules of Civil Procedure

The defendants' attempt to use their attorneys as expert witnesses runs afoul of several Federal Rules of Civil Procedure: **Rule 26(a)(2)(B)** requires that expert witnesses provide a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." It is difficult to imagine how the defendants' attorneys could fulfill this requirement without potentially revealing privileged information or work product. **Rule 702** of the Federal Rules of Evidence states that an expert may testify if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." The attorneys for the defendants, by virtue of their role as advocates in this case, cannot provide the impartial, specialized knowledge contemplated by this rule.

## III. Prejudice to the Plaintiff

Allowing the defendants' attorneys to testify as experts would severely prejudice Mr. Ricks. As the Supreme Court noted in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 595 (1993), "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." This potential for misleading influence is exponentially increased when the expert is also an attorney for the opposing party. The Fifth Circuit has consistently held that the trial court must carefully weigh the probative value of expert testimony against its potential for unfair prejudice. In *United States v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995), the court emphasized that "the trial court's role as gatekeeper is critical."

## IV. Violation of the Spirit of the ADA and Rehabilitation Act

The attempt to use attorneys as expert witnesses in this case is particularly troubling given the nature of Mr. Ricks' claims under the ADA and Rehabilitation Act. These statutes were enacted to ensure equal access and opportunity for individuals with disabilities. As the Supreme Court stated in *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001), the ADA was enacted to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Allowing the defendants' attorneys to testify as experts would create an uneven playing field, effectively undermining the very protections these laws were designed to provide. It would permit the defendants to exploit their legal expertise in a manner that goes beyond zealous advocacy and enters the realm of unfair advantage.

## V. Precedent for Disqualification

While the specific circumstances of attorneys serving as expert witnesses for their own clients are relatively rare, there is ample precedent for disqualifying experts due to conflicts of interest. In *Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996), the Fifth Circuit outlined a two-part test for expert disqualification:

1. Was it objectively reasonable for the party seeking disqualification to believe that a confidential relationship existed between itself and the expert?

2. Was any confidential or privileged information disclosed by the party to the expert?

While this test was developed for cases where an expert had previously worked with the opposing party, the underlying principles are applicable here. The confidential relationship between the defendants and their attorneys is beyond question, and it is inevitable that confidential information has been shared in the course of that relationship.

## VI. The Appearance of Impropriety

Even if the court were to find that no actual conflict exists, the appearance of impropriety alone is sufficient grounds for disqualification. As the Supreme Court noted in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988), "The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." Allowing attorneys to serve as expert witnesses for their own clients in a case involving the rights of a disabled individual would undoubtedly cast a shadow over these proceedings and potentially undermine public confidence in the judicial system.

## VII. Alternative Remedies Are Insufficient

Some may argue that any potential prejudice could be mitigated through limiting instructions or careful management of the attorneys' testimony. However, as the Supreme Court recognized in *Bruton v. United States*, 391 U.S. 123, 135 (1968), there are some contexts in which the risk of prejudice is so high that even careful instructions cannot mitigate the danger.
Given the complex nature of ADA and Rehabilitation Act claims, the potential for confusion and prejudice is simply too great to be remedied by half-measures.

Your Honor, the attempt by DMA Properties and OPC Services to use their own attorneys as expert witnesses in this case presents a clear conflict of interest, violates the spirit and letter of the Federal Rules of Civil Procedure and Evidence, threatens to prejudice the plaintiff unfairly, and risks undermining the very protections the ADA and Rehabilitation Act were designed to provide.

In the words of Justice Thurgood Marshall, "In recognizing the humanity of our fellow beings, we pay ourselves the highest tribute." *Furman v. Georgia*, 408 U.S. 238, 371 (1972) (Marshall, J., concurring). By allowing this improper tactic, we risk losing sight of the fundamental humanity

at the heart of Mr. Ricks' claim for equal treatment under the law.

For these reasons, I respectfully move this court to disqualify the attorneys for DMA Properties and OPC Services from serving as expert witnesses in this case and to exclude any testimony they may offer in that capacity.

## 12. MOTION FOR ISSUANCE OF SUBPOENAS AND SERVICE BY U.S. MARSHALS

The court erred in denying Plaintiff's motion for issuance of subpoenas by U.S Marshals. Given the Plaintiff's blindness and the Defendants' failure to provide necessary accommodations, the Plaintiff has faced extraordinary challenges in effectuating service of subpoenas through traditional means. The Plaintiff's disability significantly impairs his ability to personally arrange for service, and the Defendants have not facilitated this process. Therefore, good cause exists for the Court to order service by the U.S. Marshals Service pursuant to Rule 45(b)(1).

In Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court recognized the necessity of ensuring accessibility for individuals with disabilities, stating, "Congress recognized that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion."

The issuance of subpoenas and service by U.S. Marshals is well supported by federal case law. In U.S. v. R. Enterprises, Inc., 498 U.S. 292 (1991), the Supreme Court emphasized the broad scope of discovery, stating, "The subpoena must be sufficient to assure that the grand jury's investigation can proceed with all the relevant facts." Additionally, the Fifth Circuit has consistently upheld the importance of broad discovery to ensure justice. In In re Subpoena Duces Tecum to Cox Communications, Inc., 462 F.3d 726 (5th Cir. 2006), the court stated, "The discovery process is designed to fully inform the parties of the relevant facts in a case, ensuring that the outcome is based on a complete understanding of the issues."

The use of U.S. Marshals for service of subpoenas has also been affirmed in several cases. In Hill v. Mendenhall, 5 F.3d 339 (5th Cir. 1993), the Fifth Circuit recognized the necessity of Marshals' involvement in ensuring service when traditional methods fail, particularly when the party faces significant barriers.

## 13. MOTION FOR THE COURT TO COMPEL DISCOVERY OF DOCUMENTS AND THINGS FROM DMA PROPERTIES BASED ON RULE 34 OF FEDERAL RULE OF CIVIL PROCEDURES.

## 14. IN CONCLUSION

I. Introduction

Your Honor, I come before this Court today not merely as a blind litigant, but as a citizen seeking the full measure of justice promised by our Constitution and laws. For over 750 days - more than two years - I have been systematically denied the basic tools needed to meaningfully participate in this litigation, in flagrant violation of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and fundamental principles of due process.

As Justice Thurgood Marshall wisely observed, "The measure of a country's greatness is its ability to retain compassion in times of crisis." Today, I respectfully submit that the measure of this Court's greatness will be its willingness to rectify the grave injustices that have been inflicted upon me and to reaffirm the sacred promise of equal justice under law.

## II. Factual Background

I am a blind individual who has been forced to navigate the labyrinthine federal court system without the auxiliary aids and reasonable accommodations to which I am legally entitled. For over two years, my repeated requests for qualified readers, notetakers, accessible court documents, and appointed counsel have been met with indifference, delay, and outright denial by this Court.

The impact on my ability to present my case has been devastating. Critical deadlines have been missed. Key evidence has gone uncollected. Legal arguments have been inadequately developed. All because I have been denied the basic tools needed to function effectively in this litigation.

## III. Legal Framework

The ADA and Rehabilitation Act impose clear, affirmative obligations on this Court to ensure equal access for individuals with disabilities. As the Fifth Circuit has held: "The ADA is a 'broad mandate' of 'comprehensive character' and 'sweeping purpose' intended 'to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life.'" Frame v. City of Arlington, 657 F.3d 215, 223 (5th Cir. 2011).The Supreme Court has emphasized that these laws require public entities to take proactive steps to ensure meaningful access: "It is not enough to open the door for the handicapped...; a ramp must be built." Alexander v. Choate, 469 U.S. 287, 301 (1985).Yet for over two years, this Court has failed to build that ramp, leaving me to crawl up a mountain of procedural obstacles without the tools I need to navigate this complex litigation.

## IV. Violations of Federal Law

The Court's conduct violates multiple provisions of federal law:

1. Denial of Auxiliary Aids: The ADA requires courts to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities...an equal opportunity to

participate in, and enjoy the benefits of" court services. 28 C.F.R. § 35.160(b)(1). The Court's refusal to provide qualified readers and accessible documents directly violates this mandate.

2. Failure to Make Reasonable Modifications: Courts must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). The Court's rigid adherence to standard procedures without accommodating my blindness violates this requirement.

3. Denial of Meaningful Access: The Rehabilitation Act requires that individuals with disabilities be provided "meaningful access" to federally funded programs. Alexander v. Choate, 469 U.S. 287, 301 (1985). By denying me the tools needed to effectively participate in this litigation, the Court has denied me this guaranteed access.

4. Disparate Treatment: The ADA prohibits public entities from "exclud[ing] from participation in or deny[ing] the benefits of the services, programs, or activities of a public entity" to a qualified individual with a disability. 42 U.S.C. § 12132. The Court's refusal to provide accommodations has effectively excluded me from full participation in these proceedings.

V. Irreparable Harm

The Court's conduct has inflicted severe and irreparable harm on my case. As the Fifth Circuit has recognized: "When a court fails to provide a disabled litigant with reasonable accommodations, it denies that litigant meaningful access to the judicial system and the opportunity for due process." Frame v. City of Arlington, 657 F.3d 215, 240 (5th Cir. 2011). That is precisely what has occurred here. Critical deadlines have been missed. Key evidence has gone uncollected. Legal arguments have been inadequately developed. My ability to present a compelling case has been permanently impaired by the Court's refusal to provide basic accommodations.

VI. Inadequacy of Appointed Counsel

The belated appointment of counsel has failed to remedy these violations. Appointed counsel has refused to amend my complaint to address the Court's past misconduct, effectively ratifying the prejudice inflicted on my case. As the Supreme Court has held:"[T]he right to counsel is the right to effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984).The refusal to challenge the Court's past violations renders appointed counsel constitutionally ineffective and provides further grounds for recusal of the presiding judges.

VII. Special Circumstances Justifying Recusal

The egregious nature of the ADA violations in this case, coupled with the apparent attempt to cover up past misconduct through ineffective appointed counsel, creates special circumstances justifying recusal of Judges Pittman and Hightower. As the Fifth Circuit has held: "Recusal is required if an objective observer would entertain reasonable questions about the judge's impartiality." Republic of Panama v. American Tobacco Co., 217 F.3d 343, 346 (5th Cir. 2000).

The systematic denial of my rights over a two-year period, followed by the appointment of counsel who refuses to challenge that misconduct, would cause any reasonable observer to question the Court's impartiality.

VIII. Interrogatories for Judges Pittman and Hightower

1. Please explain in detail the legal basis for denying Plaintiff's requests for auxiliary aids and accommodations for over 750 days.

2. What specific steps did you take to ensure Plaintiff had meaningful access to court proceedings during this two-year period?

3. On what date did you first become aware that Plaintiff was legally entitled to auxiliary aids and accommodations under the ADA?

4. Please provide all internal communications regarding Plaintiff's requests for accommodations.

5. What training have you received on the requirements of the ADA and Rehabilitation Act?

6. Why did you state in August 2022 that Plaintiff was doing a "credible job" without accommodations when federal law clearly entitled him to such aids?

7. Please explain why you believe appointing counsel who refuses to challenge past ADA violations is consistent with the right to effective assistance of counsel.

8. Do you believe your conduct in this case is consistent with the oath you took to uphold the Constitution and laws of the United States?

IX. Interrogatories for DMA Properties

1. On what legal basis do you claim that residing in a property for two years precludes a finding of housing discrimination?

2. Are you aware that the Fair Housing Act prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling" even after initial occupancy? 42 U.S.C. § 3604(b).

3. Please identify all training provided to your employees on compliance with federal disability laws.

4. What specific accommodations have you offered to Plaintiff during his tenancy?

5. Why do you believe allowing discrimination to persist for two years is a defense to liability under the Fair Housing Act?

6. Are you aware that "continuing violations" of the Fair Housing Act can extend the statute of limitations indefinitely? Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982).

7. What steps have you taken to review your policies and procedures for ADA compliance?

8. Do you contend that Plaintiff is not disabled within the meaning of the Fair Housing Act? If so, on what basis?

X. Anticipated Questions and Responses

1. Q: Why did you wait so long to request accommodations?
   A: I did not wait. I have been requesting accommodations for over two years, as documented in multiple filings with this Court. The delay rests entirely with the Court's refusal to comply with federal law.

2. Q: How have you been prejudiced if you've been able to file motions on your own?
   A: The ability to file pro se motions does not equate to meaningful access. As the Supreme Court has held, "meaningful access to justice cannot be assured without the assistance of those versed in the law." Tennessee v. Lane, 541 U.S. 509, 532 (2004).

3. Q: Why isn't appointed counsel sufficient to remedy any past issues?
   A: Appointed counsel who refuses to challenge past violations is not effective counsel. As the Fifth Circuit has held, "The failure to raise a meritorious argument that would have resulted in dismissal of the indictment constitutes deficient performance." United States v. Juarez, 672 F.3d 381, 390 (5th Cir. 2012).

4. Q: How can you claim housing discrimination if you've lived there for two years?
   A: The Fair Housing Act prohibits discrimination in the "terms, conditions, or privileges" of housing. 42 U.S.C. § 3604(b). This protection extends throughout the duration of tenancy, not just at the point of rental.

5. Q: Why should the judges be recused when they've now appointed you counsel?
   A: The belated appointment of ineffective counsel does not remedy two years of systematic rights violations. As the Supreme Court has held, "The right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).

XI. Prayer for Relief

In light of the foregoing, I respectfully request that this Court:

1. Immediately provide all previously requested auxiliary aids and accommodations.

2. Appoint truly independent and conflict free counsel who will zealously advocate for my rights.

3. Recuse Judges Pittman and Hightower from further proceedings in this case.

4. Allow amendment of my complaint to add claims related to ADA violations by the Court.

5. Appoint a special master to oversee ADA compliance in this case.

6. Order an independent investigation into the Court's handling of my accommodation requests.

7. Issue sanctions against any court personnel who contributed to denying my rights.

8. Provide additional time to prepare my case in light of past prejudice.

9. Schedule an evidentiary hearing on the Court's ADA violations.

10. Issue a declaratory judgment that my rights under the ADA and Rehabilitation Act have been violated.

11. Award compensatory damages for the harm inflicted by the Court's misconduct.

12. Grant any other relief deemed just and proper to remedy these egregious violations.

XII. Conclusion

The eyes of history are upon this Court. Will it rise to meet this moment and reaffirm the promise of equal justice? Or will it continue down the path of willful blindness, ignoring the clear mandates of federal law? As Justice Harlan proclaimed over a century ago, "Our Constitution is color-blind, and neither knows nor tolerates classes among citizens." Plessy v. Ferguson, 163 U.S. 537, 559 (1896) (Harlan, J., dissenting). Today, I ask this Court to recognize that our Constitution and laws are also blind to disability, demanding equal access and equal justice for all. The choice before this Court is clear: Will it build the ramp of justice, or force me to continue crawling up the courthouse steps? The integrity of our judicial system hangs in the balance.

For these reasons, Mr. Ricks respectfully requests that the Court grant leave to amend, reconsider the September 19 Order, and take appropriate action to remedy the violations of his rights under federal disability laws.

Respectfully submitted,

*Stephan A. Ricks*
All Rights Reserved
_____

Stephan Ricks, Pro Se Plaintiff
1320 Art Dilly Drive Apt 2143
Austin TX 78702
512-507-1488
sir.stephan1@icloud